**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **PROJECT FOR PRIVACY AND SURVEILLANCE ACCOUNTABILITY, INC.,** |
| Plaintiff, |
| v. |
| **OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE**, |
| Defendant. |

Case No. 22-cv-2134 (CRC)

## MEMORANDUM OPINION AND ORDER

The Project for Privacy and Surveillance Accountability ("PPSA") submitted a Freedom of Information Act ("FOIA") request to the Office of the Director of National Intelligence ("ODNI") seeking records related to intelligence community's purchase of Americans' private data. ODNI withheld portions of the records under FOIA Exemptions 1, 3, 5, 6, and 7. PPSA challenged most of those withholdings, and both sides have moved for summary judgment. Finding neither side the clear winner, the Court will deny PPSA's motion and grant ODNI's motion in part and deny in part without prejudice.

## I.    Background

In 2021, former Director of National Intelligence Avril Haines made a promise during her Senate confirmation hearing to publicize the circumstances under which the U.S. intelligence community purchases Americans' private data and the legal basis for doing so.  Compl. ¶ 8. Seeking to hold Director Haines to that promise, PPSA filed a FOIA request with ODNI seeking:

(1) All agency records mentioning Director Haines's January 19, 2021 promise, in response to questioning from Senator Ron Wyden, to 'inform Americans about any circumstances in which the Intelligence Community purchases their data, and the legal basis for doing

it,' including any records[] created, altered, sent, or received in response that that exchange between Haines and Wyden.

(2) To the extent not responsive to Item 1 herein, all agency records created, altered, sent, or received in preparation for any public disclosure, as contemplated by Director Haines, describing any of (i) the Intelligence Community's purchases of Americans' private data, (ii) the legal basis for doing so, or (iii) the guidelines under which the Intelligence Community operates in doing so.

Compl. ¶ 8; Exhibit A.  After waiting over a year for ODNI to produce the requested documents, PPSA filed suit to compel disclosure.  PPSA Mot. for Summ. J. at 3.  ODNI proceeded to search for and produce responsive documents, and also consulted the Defense Intelligence Agency ("DIA") and the Federal Bureau of Investigation ("FBI") for responsive records.  ODNI ultimately released "two documents in full, twenty-three documents in part, and withheld fourteen documents in full pursuant to FOIA Exemptions 1, 3, 5, 6, and 7(E)."  ODNI Mot. for Summ. J. at 1.  PPSA does not challenge the adequacy of the agency's search.  Id.  Nor does it dispute the agency's withholdings under Exemption 6 or under Exemption 3 that rely on 10 U.S.C. § 424.  PPSA Mot. for Summ. J. at 6 n.6.

The parties filed cross-motions for summary judgment, both of which are now ripe for review.

## II.    Legal Standard

Summary judgment is warranted when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Where a government agency "has withheld responsive documents pursuant to a FOIA exemption," at summary judgment, it may "carry its burden to prove the applicability of the claimed exemption by affidavit" so long as the affidavit is adequately detailed, evinces the logical application of the exemption, and is not controverted by evidence in the record.  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing Miller v. Casey, 730 F.2d 773, 776

(D.C. Cir. 1984)).  "Ultimately, an agency's justification for invoking a FOIA exemption is

sufficient if it appears 'logical' or 'plausible.'"  Id. (quoting Wolf v. CIA, 473 F.3d 370, 374–75

(D.C. Cir. 2007)).  At the same time, because the primary purpose of FOIA is disclosure,

exemptions are construed narrowly.  Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011).

Once an agency shows that the contested material is covered by a statutory exemption,

the agency must make a "focused and concrete" showing that disclosing the withheld records

would cause foreseeable harm.  Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 370

(D.C. Cir. 2021); 5 U.S.C. § 552(a)(8)(A)(i)(I).  The agency must also demonstrate that it has

produced "[a]ny reasonably segregable portion of a record . . . after deletion of the portions

which are exempt."  5 U.S.C. § 552(b).

## III.    Analysis

### A.  Exemptions

ODNI seeks to redact or withhold entirely several pages of the agency's document

production, including letters from senators to intelligence officials; minutes from an intelligence-

related legal working group; an email chain between intelligence officials regarding a New York

Times article concerning DIA's use of commercial data; and an email chain coordinating "due-

outs" from the intelligence community's Annual Threat Assessment briefing to Congress.  See

generally ODNI Vaughn Index (ECF No. 33-1 at 14–15); DIA Vaughn Index (ECF No. 33-2 at

16–17); Declaration of Gregory M. Koch, Chief, Information Management Office, Office of the

Director of National Intelligence ("Koch Decl.") (ECF No. 33-1 at 1–13); Declaration of Robin

L. Hill, Deputy Division Chief of the Information Management Office Open Government

Division for the Defense Intelligence Agency ("Hill Decl.") (ECF No. 33-2 at 1–15); Declaration

of Michael G. Seidel (Section Chief of the Record/Information Dissemination Section,

Information Management Division, Federal Bureau of Investigation ("Seidel Decl.") (ECF No. 33-3).

ODNI has invoked multiple exemptions to justify each of its withholdings, but it need only identify one applicable exemption in order to validly "withhold [each] document[] or portion[] thereof." Cause of Action Inst. v. DOJ, 330 F. Supp. 3d 336, 351–52 (D.D.C. 2018). Here, the Court concludes that the ODNI permissibly withheld, in full or in part, pages 000047–48, 000097–99, and 000113–115, but has yet to offer a sufficient explanation of its withholdings on pages 000017, 000024, 000106–112, 000116, and 000117–118. The Court addresses each exemption and agency withholding in turn.

### 1. Exemptions 1 and 3

FOIA Exemption 1 allows an agency to withhold information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy," as long as it is "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1)(A)–(B); see also King v. DOJ, 830 F.2d 210, 214 (D.C. Cir. 1987). Here, ODNI invokes Executive Order 13,526, which "prescribes a uniform system for classifying . . . national security information." Exec. Order No. 13,526, 75 Fed. Reg. 707, 707 (Dec. 29, 2009). Among other things, Executive Order 13,526 protects from unauthorized disclosure information "pertain[ing] to . . . intelligence activities (including covert action), intelligence sources or methods, or cryptology" that, if disclosed, could result in "identifiable or describable damages to the national security." Id. at § 1.4.

Two principles animate the Court's assessment of whether Exemption 1's prerequisites are satisfied. On one hand, the Court "afford[s] 'substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record,' and 'little proof or

explanation is required beyond a plausible assertion that information is properly classified.'" Shapiro v. DOJ, 239 F. Supp. 3d 100, 121 (D.D.C. 2017) (quoting Mil. Audit Proj. v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); Morley v. CIA, 508 F.3d 1108, 1124 (D.C. Cir. 2007)).  On the other, courts may not accept agency affidavits that "merely parrot" the language of a relevant authority or are "drawn in conclusory terms."  Carter v. U.S. Dep't of Com., 830 F.2d 388, 393 (D.C. Cir. 1987) (quotation omitted).  Harmonizing these principles, in order for an agency's assertion of Exemption 1 to be "plausible," it must offer more than a conclusory sentence or a generic restatement of the relevant standard.

FOIA Exemption 3 protects information "specifically exempted from disclosure by statute," if that statute meets certain conditions.  5 U.S.C. § 552(b)(3).  Here, ODNI relies on the National Security Act ("NSA"), which "requires the Director of National Intelligence to 'protect intelligence sources and methods'" and qualifies as a withholding statute under Exemption 3. Larson, 565 F.3d at 865 (quoting 50 U.S.C. § 3024(i)(1) (formerly 50 U.S.C. § 401–1(i)(1)).

"Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole inquiry for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978).  "[A]n agency invoking Exemption 3 must demonstrate its applicability 'in a nonconclusory and detailed fashion,' and must provide 'the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a searching de novo review.'"  Shapiro, 239 F. Supp. 3d at 123 (quoting Goland, 607 F.2d at 351; Church of Scientology of Ca., Inc. v. Turner, 662 F.2d 784, 786 (D.C. Cir. 1980)) (second alteration in original).

ODNI's Exemption 1 and Exemption 3 justifications are similar.  The agency defends its

Exemption 1 withholdings on the ground that the contested information was properly classified

pursuant to Executive Order 13,526 and concerns "intelligence activities (including covert

action), intelligence sources or methods, or cryptology."  Exec. Order No. 13,526 at § 1.4(c).

And ODNI justifies its Exemption 3 withholdings under the NSA's protection against the

unauthorized disclosure of "intelligence sources and methods."  50 U.S.C. § 3024(i)(1).  So

although the Exemptions 1 and 3 analyses differ, in this case, the driving inquiry is the same:

whether disclosure would improperly reveal intelligence activities, sources, or methods.

      a.   <u>Redactions on Pages 000047–48 and 000097–99</u>

To begin, the Court considers ODNI's withholdings on pages 000047–48 and 000097–99

of ODNI's production.

On pages 000047–48, ODNI has withheld portions of a 2021 letter from Senators Ron

Wyden and Martin Heinrich to Director Haines and Central Intelligence Agency ("CIA")

Director William Burns; the letter was "previously processed and [publicly] released by" the

CIA in redacted form.  ODNI <u>Vaughn</u> Index Nos. 000047–48.  In the letter, to which ODNI

hyperlinks in its <u>Vaughn</u> Index, Senators Wyden and Heinrich request an "expedited

declassification review of the Privacy and Civil Liberties Oversight Board's (PCLOB's)

'Executive Order 12333 Central Intelligence Agency Deep Dive II.'"  <u>Id.</u>  EO 12,333 established

the framework for how intelligence agencies collect, analyze, and disseminate foreign

intelligence information.  46 Fed. Reg. 59941 (Dec. 4, 1981).  The publicly-available version of

the Senators' letter suggests that the CIA redacted information about secret activities it

undertook pursuant to EO 12,333, potentially in relation to how agencies gather data on

Americans.  And the <u>Vaughn</u> Index description of these pages states that the withheld portions of

the letter "summarize[] and quote[] some of the classified information" that the agency has declined to make public.  ODNI Vaughn Index Nos. 000047–48.  Taken together, the redacted letter, the Vaughn Index description, and the Koch declaration provide enough detail for the Court to conclude that the documents "logically and plausibly" include information about intelligence sources and methods, Wolf, 473 F.3d at 376–77, and that the disclosure of such information could jeopardize U.S. intelligence capabilities, see Koch Decl. ¶ 20.

The Court next considers pages 000097–000099, which were produced by the DIA. These pages encompass two sets of materials: (1) "meeting minutes from a legal working group between DIA [and other government agencies] regarding the legal considerations of commercial data use, the obtaining of commercial data, the current status of a specific ongoing effort and certain issues resulting from return to service actions of military members assigned to DIA, and a discussion of Garrity issues as they relate to security clearance investigations and reviews," DIA Vaughn Index No. V-13A, and (2) an "email between DIA and ODNI and senior [intelligence community] leaders regarding DIA's use of commercial data after publication of a New York Times article on that same subject," id. at No. V-4-14.  Segregable information within both of these materials has been released to PPSA.  DIA Vaughn Index Nos. V-13A, V-4-14.

DIA has met its burden for applying Exemptions 1 and 3 to the withheld portions of these pages.  As the DIA Vaughn Index previews and the Hill declaration elaborates, "the withheld information speaks to the intelligence sources and methods used by the [DIA] to review and analyze information gathered from commercial data," and "also contains references to both specific intelligence sources and methods and information derived from those intelligence sources and methods."  Hill Decl. ¶ 14; see also DIA Vaughn Index Nos. V-13A, V-4-14 ("This information . . . protect[s] intelligence sources and methods the release of which would

compromise the effectiveness of the intelligence community."); cf. Gellman v. DHS, 613 F. Supp. 3d 124, 142–43 (2020) (Cooper, J.) (finding that ODNI properly withheld intelligence information "that was included in, anticipated may be included in, or discussed as a result of media reports").  In addition, DIA explains that the information withheld on these pages "could be used to identify sources working with the U.S. government and military," and release of such material could "expose those sources to serious harm" and provide "adversaries of the United States" with "sufficient information about specific intelligence collection and analysis techniques" that they could use to resist intelligence-gathering.  Hill Decl. ¶ 14.

The government also invokes Exemption 5 to justify its withholding of information on pages 000097–000099.  Because the Court finds that DIA has adequately supported the withholding under Exemptions 1 and 3, it does not address whether Exemption 5 also warrants the withholding of these pages.

To sum up: ODNI's redactions to pages 000047–48 and 000097–99 are proper under Exemptions 1 and 3, and the agency need not disclose the redacted material.

> ### b.  Redactions on Pages 000017, 000024, 000106–000116

In contrast, ODNI has not persuaded the Court that its desired withholdings on pages 000017, 000024, and 000106–116 are warranted, at least under Exemptions 1 and 3.[1]

*First*, ODNI seeks to redact one paragraph on page 000017 of its production and one paragraph on page 000024, asserting that each paragraph falls under the coverage of Exemptions

---

[1]  ODNI has also invoked Exemptions 1 and 3 with respect to redactions on pages 000117–000118.  As with the explanations for the desired redactions on pages 000017, 000024, and 000106–000116, the government's Exemption 1 and 3 explanations for the redactions on pages 000117–000118 are boilerplate and lacking in necessary detail.  See Koch Decl. ¶¶ 19–24; Seidel Decl. ¶¶ 12–16.  But because the government principally justifies the withholdings on pages 000117–000118 under Exemption 7(E), the Court addresses these redactions more fulsomely below.  See infra at Section III.A.3.

1 and 3 because it contains "properly classified" information and "discuss[es] intelligence sources and methods." ODNI Vaughn Index Nos. 000017, 000024. But ODNI offers nothing to describe or contextualize the general contents of either page. The Court agrees with PPSA that the Koch declaration and ODNI Vaughn index provide "little more than boilerplate language" alluding to "intelligence methods" and "generically summarizing some reasons why such methods are typically kept confidential." PPSA Mot. for Summ. J. at 8.

Although courts give "special deference [to] agency affidavits on national security matters," Morley, 508 F.3d at 1126, "deference is not equivalent to acquiescence; [an agency] declaration may justify summary judgment only if it is sufficient 'to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" Campbell v. DOJ, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting King, 830 F.2d at 218), as amended (Mar. 3, 1999).

Here, the generic language of ODNI's Vaughn Index does not allow the Court to meaningfully evaluate the validity of the withholding. The declaration "parrot[s] established legal standards" (if that) without providing any useful description of the documents from which the Court could begin analysis. Am. Immigr. Council v. DHS, 950 F. Supp. 2d 221, 236 (D.D.C. 2013). Although the Court is mindful of the inherent difficulty in describing intelligence sources with specificity, agencies must do more than simply restate the text of the exemptions. See, e.g., Brick v. DOJ, 293 F. Supp. 3d 9, 11 (D.D.C. 2017) (rejecting a declaration that "merely states that 'the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to plaintiff[,]' and that the redacted information 'pertains to intelligence activities source and methods and has been the subject of declassification in accordance with existent regulations'") (quoting agency declaration); see also Phys. for Hum. Rts. v. DOD, 675 F.

Supp. 2d 149, 170–71 (D.D.C. 2009) (finding deficient a declaration which describes material as "non-segerable [sic] classified information" related to "intelligence sources and methods").

The Court cannot conclude, on the record before it, that 000017 and 000024 fall within the coverage of Exemption 1 and 3. As ODNI has not invoked any other FOIA exemption to justify the redactions on these pages, the agency must submit a supplemental affidavit to allow the Court to evaluate whether the redactions are proper.

*Second*, ODNI seeks to redact material on pages 000106–000116, which reflect a "chain coordinating due-outs from the Annual Threat Assessment briefing to Congress" that "includes draft written and verbal talking points, draft recommendations, and questions posed to the interagency group." ODNI <u>Vaughn</u> Index, Nos. 000106–000116. To justify withholding these documents under Exemptions 1 and 3 (the agency also invokes Exemption 5 for a subset of these pages, which the Court addresses in the following subsection), ODNI relies on the Koch declaration, which states generically that "the information" on these pages describes "intelligence, activities, capabilities, or methods employed by [intelligence community] elements" and "would tend to reveal specific intelligence sources and methods that are either still actively in use or which remain viable for use today." Koch Decl. ¶¶ 24, 20.

As above, these kinds of conclusory statements cannot sustain the application of Exemptions 1 and 3. Neither the <u>Vaughn</u> Index nor the Koch declaration substantiates with any detail how disclosing the draft due-outs would run the risk of revealing intelligence sources and methods. The agency's explanations also do not specify what material is on which page, making it even more difficult to analyze whether the agency's withholdings are consistent with FOIA. <u>Cf</u>. <u>Am. Immigr. Council</u>, 950 F. Supp. 2d at 236 (rejecting FOIA "declarations and briefs that are laden with generalized, categorical descriptions of the contents" of withheld documents).

Because ODNI's declaration uses "identical boilerplate language to justify each Exemption 1 withholding without addressing the specific harm to national security that would flow from the release of any particular document," and the Court cannot readily identify the specific harm that would result from disclosure of pages 000106–116, the agency's explanation is insufficient to sustain Exemption 1 or 3 withholdings.  Wash. Post Co. v. Special Inspector Gen. for Afg. Reconstr., No. 18-cv-2622, 2020 WL 5530308, at *9 (D.D.C. Sep. 15, 2020).

As ODNI has invoked Exemptions 1, 3, 5, and 6 in a blanket fashion to protect its withholdings on pages 000106–000116 from disclosure, the Court must do some additional work to determine how to move forward.  As just discussed, Exemptions 1 and 3 do not protect the redactions on these pages.  And ODNI only specifies why redactions on pages 000110–000112 and 000113–000115 merit protection under Exemption 5.  Koch Decl. ¶¶ 26–28; see infra at Section III.A.2.  The agency's explanation leaves pages 000106–000109 and 000116 unaccounted for by any FOIA exemption except Exemption 6.

As noted above, for the purposes of its cross-motion for summary judgment, PPSA has disclaimed any challenge to agency withholdings under Exemption 6.  PPSA Mot. for Summ. J. at 6 n.6.  ODNI may therefore redact information on pages 000106–000116 that is necessary to protect the "personal privacy" of agency personnel.  See 5 U.S.C. § 552(b)(6); Koch Decl. ¶¶ 30–33.  But the agency has not made clear what information on these pages falls within Exemption 6's rather more limited purview.

Given the agency's across-the-board imprecision, the Court orders ODNI to submit a supplemental affidavit to allow it to evaluate whether the redactions on pages 000106–000109 and 000116 are proper under Exemptions 1, 3, or 6.

   2.  *Exemption 5*

ODNI made redactions to pages 000110–000112 and 000113–000115 pursuant to FOIA Exemption 5.  Again, these pages are part of a "chain coordinating due-outs from the Annual Threat Assessment briefing to Congress" that "includes draft written and verbal talking points, draft recommendations, and questions posed to the interagency group."  ODNI Vaughn Index, Nos. 000106–000116.

Exemption 5 generally protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption "incorporates the privileges available to Government agencies in civil litigation, and exempts those documents that are normally privileged in the civil discovery context."  Georgia v. DOJ, -- F.4th --, 2025 WL 2314892, at *4 (D.C. Cir. 2025) (internal citations omitted) (cleaned up).  ODNI asserts that the redactions on pages 000110–000112 are appropriate under the deliberative process privilege and that those on pages 000113–000115 are warranted under the attorney-client privilege.  The Court addresses each argument in turn.

a.  Deliberative Process Privilege (Redactions on Pages 000110–000112)

The Court begins with deliberative process privilege, which shields government records that are predecisional and deliberative.  See Tax Analysts v. IRS, 117 F.3d 607, 616 (D.C. Cir. 1997).  The deliberative process privilege has three requirements.  First, documents must be predecisional, meaning that they were "generated before the agency's final decision on the matter."  Reps. Comm. for Freedom of the Press, 3 F.4th at 362.  Second, documents must be deliberative, in that they were "prepared to help the agency formulate its position."  Id.  The agency must identify the relevant decision or decision-making process to which the withheld records contributed.  See Access Reps. v. DOJ, 926 F.2d 1192, 1196 (D.C. Cir. 1991); Senate of

the Commonwealth of Puerto Rico v. DOJ, 823 F.2d 574, 585 (D.C. Cir. 1987).  Third, communications withheld under the privilege must be intra- or inter-agency, meaning that they usually must be between government employees.  See Am. Oversight v. HHS, 101 F.4th 909, 914 (D.C. Cir. 2024).

The Court concludes, at least on this record, that the deliberative process privilege does not protect the redactions to pages 000110–000112, which purport to "reflect[] the recommendations of agency officials on what actions the agency should take following an Annual Threat Assessment briefing to Congress."  Koch Decl. ¶ 26.  To start, the justifications for the withholdings are conclusory.  ODNI wishes the Court to accept that the documents are predecisional because they are "part of a back-and-forth exchange among officials . . . made prior to any agency final decision."  Id.  They are deliberative, says the agency, because the information "reflects the considerations that ODNI officials took into account in formulating their views about what agency actions were warranted."  Id.  And they are intra-agency decisions because more "agency officials made the recommendations to assist more senior agency decision-makers in determining what follow-on actions were needed."  Id.

ODNI's explanation simply restates the deliberative process privilege standard, providing no concrete details that would allow the Court to discern whether this standard is met.  For instance, it is not clear whether the recommendations discussed were later adopted formally or informally, which would preclude labeling them as "predecisional," nor does the Court have any specific context for evaluating the "decision-making authority, or lack thereof," of the "author[s]" of the recommendations, another important factor in assessing whether the privilege applies.  Citizens for Resp. & Ethics in Washington v. GSA, 358 F. Supp. 3d 50, 53 (D.D.C. 2019) (Cooper, J.) (internal citations and quotation marks omitted).  Where an agency's

"declarations and <u>Vaughn</u> index recite the general elements of the deliberative process privilege without explaining in relative detail how they apply to the documents in question," they are "insufficient to justify invoking" the privilege. <u>Env. Integrity Proj. v. SBA</u>, 151 F. Supp. 3d 49, 54 (D.D.C. 2015) (Cooper, J.).

Even if the Court accepted ODNI's conclusory explanations, the matter would not end there. Under the FOIA Improvement Act of 2016, ODNI may not withhold privileged materials unless it also "reasonably foresees that disclosure would harm an interest protected by" the FOIA exemption. <u>Reps. Comm. for Freedom of the Press</u>, 3 F.4th at 369 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). Though broadly applicable, the FOIA Improvement Act was specifically aimed at the Exemption 5 deliberative process privilege, which one House Report described as "the most used privilege and the source of the most concern regarding overuse." <u>Ctr. for Investigative Reporting v. U.S. Customs & Border Prot</u>., 436 F. Supp. 3d 90, 105 (D.D.C. 2019) (quoting H.R. Rep. No. 114-391, at 10 (2016)). To carry its burden under the FOIA Improvement Act, ODNI must provide a "focused and concrete demonstration of why" disclosure "will, in the specific context of the agency action at issue, actually impede . . . agency deliberations going forward." <u>Reps. Comm. for Freedom of the Press</u>, 3 F.4th at 370.

ODNI's explanation—that "disclosure of the information would cause foreseeable harm to ODNI's deliberative decision-making process and attorney-client communications by chilling candid conversations about appropriate agency actions," Koch Decl. ¶ 28—is neither "focused" nor "concrete" enough to satisfy this standard. This Court has found that similarly boilerplate explanations do not pass muster under the FOIA Improvement Act. <u>See, e.g.</u>, <u>Citizens for Resp. & Ethics in Washington v. U.S. Dep't of State</u>, 585 F. Supp. 3d 34, 49 (D.D.C. 2022) (Cooper, J.) (agency stated that disclosure "could reasonably be expected to chill the open and frank

discussion between Department subcomponents regarding how to process potentially responsive documents"); see also Reps. Comm. for Freedom of the Press, 3 F.4th at 371 (similarly rejecting the assertion that "requir[ing] disclosure of the withheld information would prevent the [Office of the Inspector General] from engaging in meaningful documented discussion about policy matters in the future, which could have a negative effect on agency decision-making, and would potentially confuse the public about the reasons for the [Office of the Inspector General]'s actions in this matter").

ODNI therefore has not carried its burden under Exemption 5 to redact portions of pages 000110–000112. The government must provide a supplemental affidavit that enables the Court to decide whether the redactions are consistent with FOIA.

>
> b. Attorney-Client Privilege (Redactions on Pages 000113–000115)

The Court next turns to ODNI's assertion of attorney-client privilege on pages 000113– 000115, which "contain[] confidential communications between the Office of General Counsel (OGC) and ODNI staff." Koch Decl. ¶ 27. Attorney-client privilege "cloaks a communication from attorney to client based, in part at least, upon a confidential communication to the lawyer from the client." In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984) (cleaned up). To invoke attorney-client privilege, an agency must demonstrate that the document it seeks to withhold (1) involves "confidential communications between an attorney and his client" and (2) relates to "a legal matter for which the client has sought professional advice." Jud. Watch v. USPS, 297 F.Supp.2d 252, 267 (D.D.C. 2004) (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977)).

ODNI satisfies the standard here, having redacted "a client request for legal assistance and OGC's provision of the requested legal advice," which was in turn "prepared with the joint

expectation of the attorneys and ODNI staff that it would be held in confidence."  Koch Decl. ¶ 27; see also ODNI Vaughn Index Nos. 000106–116.

PPSA contests this designation, citing Cuban v. SEC, 744 F. Supp. 2d 60 (D.D.C. 2010). It contends that ODNI cannot assert attorney-client privilege because it has failed to address whether communications were "circulated no further than among those members of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication."  Id. at 79 (internal quotations omitted); PPSA Mot. for Summ. J. at 21–22.  But in Cuban, the government declarants asserted that they "lack[ed] any reason to believe that the records were released outside of the [agency]," which, the court concluded, was not the same as saying that the records were confidential.  744 F. Supp. 2d at 79 (cleaned up). As a result, the declarants' assertions did not demonstrate that the government was careful to keep confidential information protected from wider disclosure.  Id.; see also Mead Data Cent., 566 F.2d at 253–54 (rejecting attorney-client privilege when the descriptions of documents gave no indication as to the confidentiality of the information).  Here, by contrast, ODNI *does* assert the legal advice in question "was prepared with the joint expectation of the attorneys and ODNI staff that it would be held in confidence."  Koch Decl. ¶ 27.

In short, ODNI may redact portions of pages 000113–000115 pursuant to the attorney-client privilege available under FOIA Exemption 5.

### 3.  *Exemption 7(E)*

Finally, ODNI seeks to withhold information on pages 000117–000118, which comprise a "two-page letter" from Senator Wyden to Director Haines and FBI Director Christopher Wray "requesting that [Haines and Wray] declassify certain information related to the collection of communications under Section 702 of the Foreign Intelligence Surveillance Act (FISA)."  Seidel

Decl. ¶ 4.  The FBI, which was responsible for these pages of the production, has invoked FOIA

Exemption 7(E) to protect this letter from full disclosure.  Id. at ¶¶ 17–22.

Exemption 7 authorizes agencies to withhold certain "records or information compiled

for law enforcement purposes."  5 U.S.C. § 552(b)(7).  "To justify a withholding under

Exemption 7(E), the FBI must demonstrate that: (1) the records were compiled for law

enforcement purposes; (2) the redacted information would disclose techniques and procedures

for law enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions; and (3) the release of the requested information

might create a risk of circumvention of the law."  Shapiro v. DOJ, 393 F. Supp. 3d 111, 115

(D.D.C. 2019) (citing 5 U.S.C. § 552(b)(7)(E)) (cleaned up).

PPSA does not directly dispute that Exemption 7(E)'s first prong is satisfied.  As to the

second, although some of the FBI's proffered explanation borders on boilerplate, the Court can

conclude from the agency declaration that the withheld material, if disclosed, would reveal secret

law-enforcement techniques or methods. "The phrase 'techniques and procedures' . . . refers to

how law enforcement officials *go about* investigating a crime."  Whittaker v. DOJ, No. 18-cv-

1434-APM, 2019 WL 2569915, at *2 (D.D.C. June 21, 2019) (quoting Allard K. Lowenstein

Int'l Hum. Rts. Proj. v. DHS, 626 F.3d 678, 682 (2d Cir. 2010)) (emphasis in original).  The

FBI's FOIA declarant explains that the agency withheld "non-public details concerning [its]

gathering and collection of communications pursuant to Section 702."  Seidel Decl. ¶¶ 17, 20.

The declarant further notes that "the specific details included in Senator Wyden's two-page letter

and withheld by the FBI discuss certain national security techniques, procedures and guidelines

that are utilized in furtherance of FBI's law enforcement, national security, and intelligence

missions under Section 702 of the FISA."  Id. at ¶ 17.

With respect to the third prong of the standard, "[r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention." Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting Mayer Brown LLP v. IRS, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). Here, the FBI elaborates that release of the withheld information would "enable criminals to educate themselves about the national security technique employed for the collection and gathering of communications under Section 702 of the FISA" and therefore circumvent the effectiveness of this technique. Seidel Decl. ¶ 21. Again, although verging on formulaic, this explanation satisfies 7(E)'s deferential standard; the Court can ascertain from the provided information how release of non-public law enforcement techniques would allow for circumvention of the law. The explanation also adequately conveys how the disclosure of the FBI's communication-gathering techniques would result in foreseeable harm, as individuals who circumvent the FBI's methods could "continue to violate the law and engage in intelligence, terrorist, and criminal activities." Id.

There is, however, one problem that the Court cannot immediately resolve. According to the Seidel declaration, the redacted portions of Senator Wyden's letter not only reveal the agency's law enforcement techniques, but also, apparently, how the agency "applies and interprets Section 702 of the FISA in the context of its National Security investigations." Id. at ¶ 21; see also id. at ¶ 20 ("[T]he FBI withheld non-public details about its use, application, and interpretation of Section 702 of the FISA"). Without more information, the FBI's discussion of its interpretation of federal law raises the specter that the agency is either inappropriately withholding "a body of 'secret law' which the agency [is] using in its dealings with the public," Coastal States Gas Corp. v. DOE, 617 F.2d 854, 858 (D.C. Cir. 1980), or is instead withholding

"garden-variety legal analysis," which "does not fall under exemption 7(E)." Mayer Brown, 562

F.3d at 1194 n.1; see also PHE, Inc. v. DOJ, 983 F.2d 248, 251–52 (D.C. Cir. 1993) ("Material

like [discussion of search and seizure law and digest of useful caselaw] is precisely the type of

information appropriate for release under the FOIA.").

　　　　Given the FBI's variegated explanation for its withholdings under Exemption 7(E), the

Court is unable to determine whether the exemption covers all of the FBI's desired redactions to

Senator Wyden's letter.  The government is directed to submit a supplemental affidavit to allow

the Court to evaluate which redactions are proper.

　　　　B.  Official Acknowledgment

　　　　PPSA contends that, even if ODNI successfully invokes one or more FOIA exemptions,

the agency is not entitled to summary judgment because it has officially acknowledged the

information it now seeks to withhold.  PPSA Mot. for Summ. J. at 27.  PPSA points to a

recently-issued, unclassified ODNI policy document entitled "Intelligence Community Policy

Framework for Commercially Available Information," which provides a broad overview of how

members of the intelligence community access, collect, and process commercially available

information.  See Off. of Dir. Nat'l Intel., Intelligence Community Policy Framework for

Commercially Available Information (May 2024),

https://www.dni.gov/files/ODNI/documents/CAI/Commercially-Available-Information-

Framework-May2024.pdf ("Framework").

　　　　"If the government has officially acknowledged information, a FOIA plaintiff may

compel disclosure of that information even over an agency's otherwise valid exemption claim."

ACLU v. DOD, 628 F.3d 612, 620 (D.C. Cir. 2011).  "A plaintiff mounting an official

acknowledgment argument 'must bear the initial burden of pointing to *specific information* in the

public domain that appears to duplicate that being withheld.'" ACLU v. CIA, 710 F.3d 422, 427 (D.C. Cir. 2015) (quoting Wolf, 473 F.3d at 378) (emphasis added); see also Mobley v. CIA, 806 F.3d 568, 583 (D.C. Cir. 2015).

PPSA does not bear its burden here.  There is nothing in the record to infer that the validly withheld material in this case specifically matches the information disclosed in the Framework.  Section 1 of the Framework establishes broad principles that govern the Intelligence Community's access to and collection of personal data, and Section 2 articulates a general framework for how the Intelligence Community should treat sensitive data.  According to PPSA, the Framework discloses that "elements of the Intelligence Community (IC) lawfully access, collect, and process such commercially available information (CAI) in pursuit of mission imperatives."  PPSA Reply at 9.  But ODNI has not denied that it and other intelligence agencies collect commercially available data for national security and intelligence purposes; what's sensitive is more precisely how and why the agencies do so.  Said another way, the material that has been properly withheld by the ODNI, DIA, and FBI includes specific intelligence methods and sources and confidential legal communications, and PPSA has offered the Court no basis for concluding that the Framework contains duplicative material.

PPSA's reference to an unclassified policy document that covers the same subject or generally "similar information" is therefore insufficient to compel disclosure of otherwise validly withheld material.  Wolf, 473 F.3d at 378.

## IV.  Conclusion

For these reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 33) is GRANTED IN PART and DENIED IN PART without prejudice.  It is further

**ORDERED** that Plaintiff's Cross-Motion for Summary Judgment (ECF No. 36) is DENIED IN PART with prejudice and DENIED IN PART without prejudice.  It is further

**ORDERED** that Defendant shall, by October 2, 2025, file a renewed motion for summary judgment accompanied by supplemental affidavit(s) to enable the Court to decide whether the Defendant's withholdings on pages 000017, 000024, 000106–000112, 000116, and 000117–000118 are permissible under FOIA.  Plaintiff shall file an opposition and any cross-motion by October 16, 2025. Defendant shall file any reply by October 30, 2025.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>September 2, 2025</u>

21